UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY MERITT POSEY,

    *Petitioner,*

v.

DWIGHT NEVEN, *et al.,*

    *Respondents*.

Case No. 2:15-cv-01482-RFB-GWF

**ORDER**

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion to dismiss (ECF No. 24). Respondents contend that the original petition is untimely and further that Grounds 1 and 2 of the first amended petition do not relate back to the original petition, if otherwise timely.

### *Background*

Petitioner Anthony Posey challenges his Nevada state conviction, pursuant to a guilty plea, of two counts of abuse and/or neglect of an older person resulting in substantial bodily or mental harm or death.

Posey pled guilty specifically to Counts 4 and 7 in the indictment, and the remaining counts were dismissed pursuant to the plea agreement. (*See* ECF Nos. 25-31 & 25-32.)

At the sentencing, the presiding judge sentenced Posey to six to fifteen years on Count 4 and six to fifteen years on Count 7. The judge clearly stated that the sentence on Count 7 would run consecutive to the sentence on Count 4. (ECF No. 25-33 at 45-46.)

The original judgment of conviction, however, instead stated in error "Count 2 to run CONSECUTIVE to Count 1" – in a situation where Posey had not pled guilty to those counts, had not been convicted on those counts, and had not been sentenced on those counts, consecutively or otherwise. (ECF No. 25-34 at 3.)

The original judgment of conviction was filed on August 23, 2012; and Posey filed a timely notice of appeal on September 19, 2012. (ECF Nos. 25-34 & 26-1.)

A month later, while the direct appeal still was pending, an amended judgment of conviction was filed on October 18, 2012. The amended judgment of conviction corrected the error in the original judgment to read instead "Count 7 to run CONSECUTIVE to Count 4." (ECF No. 26-5 at 3.)

Posey did not file a notice of appeal seeking to separately appeal the amended judgment. The time to do so expired on Monday, November 19, 2012.

The state supreme court entered an order of affirmance on direct appeal on May 15, 2013. (ECF No. 26-14.) The time to seek *certiorari* review in the United States Supreme Court expired on August 13, 2013.

After 274 days had elapsed, on May 15, 2014, petitioner filed a timely state postconviction petition. Proceedings were pending on this petition in the state district court and thereafter the state supreme court through the issuance of the remittitur concluded the postconviction appeal on August 19, 2015. (ECF Nos. 26-16 & 26-42.)

Posey mailed the federal petition to the Clerk of this Court for filing on or about July 29, 2015, prior to the issuance of the remittitur on the state post-conviction appeal. (*See* ECF No. 11 at 1.)

### *Discussion*

#### *Timeliness of the Original Petition*

The present motion presents the issue of whether, when a state court judgment of conviction is amended during the pendency of a direct appeal from the original judgment of conviction, the federal limitation period starts running after the completion of the ongoing direct appeal proceedings or instead after the expiration of the time to appeal the

amended judgment, if no separate appeal is taken from the later judgment. The federal petition clearly was timely if the federal limitation period did not begin running until after the August 13, 2013, expiration of the time to seek *certiorari* review of the order of affirmance on direct appeal. Respondents contend that the federal petition instead was untimely because the limitation period began running after the expiration of the time to appeal the amended judgment of conviction, on November 19, 2012. Respondents maintain that the limitation period therefore expired one year later, on November 19, 2013, before Posey sought either state or federal postconviction review.

In *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017), the Ninth Circuit held that the one-year federal limitation period under 28 U.S.C. § 2244(d) runs from the date of finality of the judgment of conviction under which the petitioner then is being held. The court accordingly held in that case that the limitation period therefore ran from the date of finality of the amended judgment of conviction under which the petitioner then was held rather than from the date of finality of the original judgment of conviction.

The Court notes, however, that *Smith* was decided in a procedural context in which the amended judgment of conviction in question was filed years after completion of the direct appeal proceedings filed following the original judgment of conviction. *See* 871 F.3d at 685–86. Within that procedurally simple context, the decision speaks in unqualified terms as to which judgment – the original judgment or amended judgment – is "the judgment" for purposes of applying the statutory language of § 2244(d).[1] Under the

---

[1] 28 U.S.C. § 2244(d) provides in full:

    (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

unqualified language in the opinion, the matter of when the one-year period begins to run under § 2244(d)(1) appears to turn solely upon which judgment the petitioner then was being held under when he filed his federal petition. Under the panel's stated rationale, that judgment is "the judgment" for purposes of applying § 2244(d)(1), without qualification. *See* 871 F.3d at 686-88.

Petitioner contends that *Smith* does not apply to this case because the amended judgment in this case corrected only a clerical error in the original judgment.

Whether such a change leads to a new intervening judgment for purposes of the federal limitation period is subject to debate under current caselaw. On the one hand, the Ninth Circuit decision in *Gonzalez v. Sherman*, 873 F.3d 763 (9th Cir. 2017),[2] includes the following seemingly categorical language:

> For AEDPA[3] purposes, it does not matter whether the error in the judgment was minor or major. What matters is whether there is an amended judgment. Even if the judgment is not substantively changed, it constitutes a new, intervening judgment if the earlier judgment is amended or even if it is reissued as an amended judgment as in *Magwood* [*v. Patterson*, 561 U.S. 320 (2010)]. Here, the judgment, because it contains the new, correct provision of presentence credits, is an amended judgment.

---

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[2] *Gonzalez* addressed a question of whether a federal petition filed after an amended judgment of conviction was a successive petition. The same analysis that applies to determine whether an amended state court judgment is a new intervening judgment to in turn determine whether a federal petition is successive also applies to determine whether the federal limitation period has been started or restarted by an intervening judgment. *See, e.g., Smith*, 871 F.3d at 687.

[3] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

4

873 F.3d at 773 n.5. On the other hand, the same *Gonzalez* decision engages in an extensive analysis under California state law to determine whether the amended judgment would be a new judgment under state law, based upon, *inter alia,* a distinction – under that state's law – between correction of a "scrivener's error" in memorializing the oral pronouncement of the sentencing judge and a "rendering error" made by the court itself in pronouncing sentence. *See* 873 F.3d at 769–73.

The Court concludes that it does not need to conduct an extensive analysis of such fine points under Nevada state law to resolve the overall timeliness issue in this case.[4] The Court instead concludes that the federal limitation period does not begin to run in this procedural context until after the conclusion of review on the then-pending direct appeal even if, *arguendo,* the amended judgment constituted a new intervening judgment for purposes of AEDPA.

Even if the amended judgment became "the judgment" for purposes of applying § 2244(d)(1) under *Smith*, the pertinent question in the Court's view then becomes one of when *that* judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review" for purposes of § 2244(d)(1)(A). Quite clearly, if the state appellate courts overturned the conviction and/or sentence on the pending direct

---

[4] The Court is not fully sanguine that the prior Ninth Circuit law upon which *Gonzalez* ultimately relies in truth requires analysis of state law to determine whether an amended judgment is a new intervening judgment for purposes of the federal law in AEDPA. *Gonzalez* cites to *Clayton v. Biter*, 868 F.3d 840, 844 (9th Cir. 2017), for the proposition that "[w]e look to state law to determine whether a state court action constitutes a new, intervening judgment." 873 F.3d at 769. *Clayton* in turn cited to *Hill v. Alaska*, 297 F.3d 895 (9th Cir. 2002), for this proposition. *Hill* does not involve an amended judgment of conviction. The question presented in *Hill* instead concerned whether a federal petition challenging the calculation of the prisoner's release date was successive to a prior federal petition challenging instead the validity of the underlying conviction and sentence. *Hill* did not hold, nor could it hold, that state law is in any sense determinative of the different question of whether an amended judgment of conviction is a new intervening judgment for purposes of federal law. Even more significantly, nothing in the Supreme Court's prior decision in *Magwood* or the Ninth Circuit's earlier leading decisions in *Wentzell v. Neven*, 675 F.3d 1124 (9th Cir. 2012), and *Smith* suggested that state law had any determinative role in the inquiry. The panel in *Gonzalez* engaged in an extensive multi-page analysis of highly technical points of California law regarding judgments to reach a decision. Calculation of the federal limitation period instead preferably should be capable of being done quickly and reliably by busy courts and practitioners as well as – most importantly – by *pro se* inmates untrained in the law. It is subject to question whether an analysis that turns upon arcane points of state procedural law regarding judgments – to be determined definitively only years later by a federal appellate court – serves anyone's interests, and especially those of *pro se* inmates with only limited access to legal resources in prison. The apparently more categorical expressions instead in note 5 in *Gonzalez* and in *Smith* do have the advantage of greater simplicity in application, which is a very desirable virtue in this context.

5

appeal, the amended judgment would be vacated or modified to the same extent as the original judgment of conviction, without regard to whether the defendant also separately appealed the amended judgment as to some issue specific to that judgment. That is, clearly, the amended judgment would not stand following such a reversal on direct appeal simply because no separate appeal was filed. The amended judgment both practically and legally was just as much under review on direct appeal as was the original judgment, given that both would be subject to being vacated or modified by a full or partial reversal.

The Court accordingly holds that, when an intervening new judgment is filed during the pendency of a direct appeal and no separate appeal is filed, that new judgment becomes final for purposes of § 2244(d)(1)(A) upon the conclusion of the then-pending direct review proceedings or the expiration of the time for seeking further such direct review, such as by the expiration of the time to seek *certiorari* review.[5]

This holding is fully in accord with the statutory language in § 2244(d)(1)(A). The holding merely construes the meaning of the statutory language regarding when the judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review" as applied to the specific context of an amended judgment being filed during the pendency of a direct appeal.

Moreover, this construction of the statutory language in § 2244(d)(1)(A) avoids a patently absurd result that Congress clearly did not intend and that is not compelled by the plain language of the statute. There is no valid policy interest served by starting the federal limitation period running while a petitioner's direct appeal from his conviction and sentence still is pending. Typically, no federal claims are exhausted at that point; and there is no useful purpose served by starting the federal limitation period running at a time when federal review would be premature. Indeed, given that the direct appeal is part of

---

[5] In contrast, if a separate appeal is filed from the amended judgment that for some reason is not consolidated with – and then also remains pending after – the disposition of the previously-pending appeal, then it would appear that the limitation period would not begin to run until after the conclusion of such direct review or the expiration of the time to further pursue such direct review. That is, it would appear that direct review still would be ongoing with respect to the amended judgment, albeit based instead solely on the separate appeal proceeding directed only to that judgment rather than also the prior appeal.

6

the original criminal proceeding, dismissal under the abstention rule in *Younger v. Harris*, 401 U.S. 37 (1971), typically is required if federal intervention is sought during the pendency of the direct appeal. *See, e.g., Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir. 1983); *Carden v. Montana*, 626 F.2d 82, 83-85 (9th Cir. 1980). Starting the federal limitation period – which runs for only one year – running before the petitioner can even effectively seek federal habeas relief just does not make sense. The federal limitation period potentially even could expire in such a scenario before the direct appeal even was concluded, serving no good policy reason. The Court sees no reason to make such a nonsensical holding when the plain language of the statute readily can be construed, as described above, in a manner that does not lead to such an absurd result.[6]

The only end served by construing the statute in the manner proposed by respondents would be to create a "gotcha" trap for the unwary. The Supreme Court repeatedly has declined to construe the federal habeas statutes in such a manner. *See, e.g., Rose v. Lundy*, 455 U.S. 509, 520 (1982); *see also Rhines v. Weber*, 544 U.S. 269, 279 (2005) (Stevens, J., concurring). This Court also declines to do so here.

The original petition was timely.

***Relation Back***

Respondents contend in the alternative that Grounds 1 and 2 in the first amended petition do not relate back to claims in the timely original petition.

A claim in an amended petition that is filed after the expiration of the limitation period will be timely only if the claim relates back to a timely-filed claim pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the

---

[6] Petitioners conceivably could protect their interests by filing a protective federal petition and seeking a stay pending exhaustion of state court remedies, contending that the situation satisfied the special circumstances exception to *Younger*. However, there seems to be little practical utility to construing § 2244(d)(1)(A) in a manner that requires such a duplicative federal filing -- potentially years before the state direct appeal and then likely state postconviction proceedings are concluded – simply because an amended judgment was filed during still-ongoing state proceedings. Rather, the simple, common-sense construction of § 2244(d)(1)(A) outlined in the text avoids such duplicative proceedings. It also avoids penalizing *pro se* petitioners who may not have the legal savvy that would be necessary to recognize a counterintuitive and highly technical legal point that the federal limitation period would be running against them even before they had completed state direct appeal proceedings. Simplicity, again, is a desirable virtue when construing a limitation statute that must be complied with by typically *pro se* litigants.

7

same conduct, transaction or occurrence" as the timely claim. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Felix*, the Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as prior timely claims merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655–64. Rather, under the construction of the rule approved in *Felix*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. *Id.* at 659 & n.5.

At the outset, the Court must reject two general arguments that Posey makes regarding both Grounds 1 and 2.

First, petitioner urges that Grounds 1 and 2 relate back to claims in the original petition because: (a) he attached a copy of the state district court's findings, conclusions and order to his federal petition (which the petition form instructions require); (b) the order therefore should be considered as part of his original petition; and (c) the order allegedly discussed claims based on the same core facts. (ECF No. 31 at 12-14.) The Ninth Circuit has rejected petitioner's premise that a state court order is incorporated into the original petition by such attachment for purposes of relation back. *Ross v. Williams*, 896 F.3d 958, 963–73 (9th Cir. 2018). Posey's original petition made no reference to the state court order or indicated that it sets forth facts supporting his claimed grounds for relief. He therefore cannot rely upon the state court order as a basis for relation back. *Id.* at 973.

Second, petitioner maintains that, because *pro se* pleadings must be liberally construed, his original petition need only give the respondents notice of the underlying constitutional violations and/or operative facts. (ECF No. 31 at 11 & 13.) Under Rule 2(c)

of the Rules Governing Section 2254 Proceedings (the "Habeas Rules"), however, federal pleading quite clearly is not notice pleading. As Justice Ginsburg's opinion for the majority states in *Felix*:

> The "original pleading" to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).

545 U.S. at 655. Federal habeas pleading is not notice pleading, even when the petitioner is proceeding *pro se*. Habeas claims, including when pled by *pro se* litigants, must be pled with specificity, although they nonetheless are construed liberally when alleged *pro se*. *See, e.g., Felix*, 545 U.S. at 656; *Ross*, 896 F.3d at 971.[7]

The Court accordingly turns to the controlling inquiry of whether a common core of operative facts unites the amended claims and a claim or claims in the original petition.

***Ground 1***

In amended Ground 1, Posey alleges that his guilty plea was not knowing, intelligent or voluntary, in violation of the Fifth, Sixth and Fourteenth Amendments, because he was coerced into entering the plea by the state district court and his counsel. He alleges that he was coerced into entering a plea because:

---

[7] Posey cites no apposite *habeas* case holding that only notice pleading is required when the petitioner is proceeding *pro se*. Habeas cases stating only that *pro se* pleadings must be construed liberally do not establish that only notice pleading is required, contrary to the holding in *Felix* and Habeas Rule 2(c).

9

(1) he was not allowed to enter a plea of not guilty by reason of temporary insanity and was wrongly informed that it would be impossible to pursue such a theory of defense at trial;

(2) he was led to believe that trial would be futile because his rights were consistently violated, including his right to adequate notice of the grand jury proceedings; his *pro se* motions were summarily denied without a hearing; and he was denied effective assistance of counsel when replacement counsel was not appointed following a complete breakdown of trust and communication with counsel, leading to Posey feeling abandoned by his attorneys;

(3) he suffered from significant mental health problems that should be taken into account with regard to whether the plea was knowing, intelligent and voluntary, including a history of blackouts and diagnoses of post-traumatic stress disorder ("PTSD"), bipolar disorder, and personality disorder; and

(4) he did not understand the plea deal, as he believed that he would be receiving two sentences of two to twenty years and he instead received two sentences of six to fifteen years, which he believes is in violation of the plea agreement.

He alleges that the totality of these circumstances "created a coercive environment wherein Posey felt he had no option but to plead guilty." (ECF No. 18 at 11-14.)

In original Ground 3, Posey alleged that he was denied due process of law in violation of the Fourteenth Amendment because "I was coerced into taking a plea of guilty

due to the acts and omissions listed herein, which goaded me into same via the Court and Defense Counsel." (ECF No. 11 at 9.) While comparatively sparse, these allegations did expressly incorporate "the acts and omissions listed" in the remainder of the pleading, and a pleader of course can incorporate allegations from other grounds. In those grounds, Posey alleged, *inter alia*, that:

> (1) he was denied variously effective assistance of counsel, an alleged Fourteenth Amendment right to be free from arbitrariness, and due process of law because of, *inter alia*, "'Petitioner's plea of not guilty by reason of temporary insanity at the time of the commission of the crime' being changed to 'not guilty' without Petitioner's knowledge;" and because he "was deemed culpable in violation of Nevada Law, N.R.S. 194.010(5), due to my having a 'Blackout,'" (*id.* at 5, 8 & 13);
>
> (2) he was denied variously a Sixth Amendment right to fair and full hearings, a right to equal protection of the law, and a Sixth Amendment right to be present because the state district court did not allow him to meaningfully present his *pro se* motions to dismiss counsel, to rescind the judgment denying same, and to dismiss the indictment, and his efforts to raise issues throughout the criminal proceeding were "completely disregarded," and further because he was denied his right to be present before the grand jury; and he was denied effective assistance of counsel because, *inter alia*, "counsel failed to object to numerous substantive[,] procedural and/or "plain errors of the prosecution and the Court (e.g.,: insufficient notice of intent to go to the grand jury[)]" and "counsel Haylee

Kolkoski professed a complete breakdown in communication between herself and Petitioner, 06/16/2011," which "caused a lack of trust," and "Petitioner had counsel with a known 'conflict of interest,'" (*id.* at 5, 6, 11, 13, 15, 17 & 19);

(3) he was denied due process because the "sentencing judge intimated numerous opinions and bare assertions by the trial court inconsistent with facts and evidence which show I suffered 'Blackouts,''' (*id.* at 8); and

(4) he was denied due process and an alleged right to be free from arbitrariness because he "was not sentenced according to a negotiated plea agreement" and the court allowed itself and the prosecution to breach a negotiated plea agreement between petitioner and the State in violation of Nevada law (*id.* at 8 & 13).

Reading these allegations in the *pro se* original petition liberally, the Court finds that amended Ground 1 shares a common core of operative facts with and relates back to timely claims in the original petition to the extent, and only to the extent, that amended Ground 1 alleges that Posey's guilty plea was not knowing, intelligent or voluntary, in violation of the Fifth, Sixth and Fourteenth Amendments, because he was coerced into entering the plea by the state district court and his counsel, because:

(1) he was not allowed to enter a plea of not guilty by reason of temporary insanity and was wrongly informed that it would be impossible to pursue such a theory of defense at trial;

(2) he was led to believe that trial would be futile because his rights were consistently violated, including his right to adequate notice of the grand jury proceedings; his *pro se*

12

motions were summarily denied without a hearing; and he was denied effective assistance of counsel when replacement counsel was not appointed following a complete breakdown of trust and communication with counsel, leading to Posey feeling abandoned by his attorneys; and

(3) he had a history of blackouts,

such that the totality of these circumstances, and only these circumstances, created a coercive environment wherein Posey felt that he had no option but to plead guilty.

The remaining allegations from amended Ground 1 that the Court summarized previously but that the Court has not included in the recital immediately above do not relate back to a claim in the original petition, as there are no specific factual allegations in the original petition that would support such relation back. The Court notes that while Posey included conclusory allegations in the original petition regarding breach of the plea agreement, he made no specific allegations that the six to fifteen year sentences that he received violated an agreement that he instead receive only two to twenty year sentences and/or that he understood at the time of the plea that he would be receiving the latter sentences. Conclusory claims that allege no specific facts allege no core of operative facts that would support relation back. *See, e.g., Ross*, 896 F.3d at 971-72.

Amended Ground 1 therefore relates back and is timely only to the extent described above.

*Ground 2*

In amended Ground 2, Posey alleges that he was denied effective assistance of counsel because of a conflict of interest and/or irreconcilable differences between Posey and the five or more lawyers with the county public defender who represented him at one time or another, including initially attorney Haylee Kolkoski. (ECF No. 18 at 14–17.)

Respondents contend that Ground 2 does not relate back to a claim in the original petition to the extent that it alleges an irreconcilable conflict with any of the deputy public

13

defenders other than Kolkoski because the original petition refers only to a conflict with Kolkoski. (ECF No. 24 at 9; ECF No. 11 at 6 & 13.) The Court is not persuaded. A claim that petitioner had an irreconcilable conflict with other deputies also with the county public defender relates back to a common core of operative fact with the claim in the original petition that petitioner had an irreconcilable conflict with deputy county public defender Kolkoski. *See, e.g., Valdovinos v. McGrath*, 598 F.3d 568, 574-76 (9th Cir. 2010*), judgment vacated on other grounds for reconsideration*, 562 U.S. 1196 (2011), *prior relevant holding adhered to in unpublished decision*, 2011 WL 996660, 423 Fed.Appx. 720, 722 (9th Cir., Mar. 22, 2011) (*Brady* claim and related ineffective-assistance claim based upon failure to disclose additional items of exculpatory evidence related back to prior claims regarding nondisclosure of other items of exculpatory evidence); *see also Rodriguez v. Adams*, 545 Fed.Appx. 620 (9th Cir. Nov. 18, 2013) (later claim that counsel was ineffective for failing to investigate the testimony of two potential exculpatory witnesses who were present at the scene related back to earlier claim that counsel was ineffective for failing to investigate the testimony of three other witnesses who also were present at the scene).

Ground 2 relates back to the original petition in full.

### *Conclusion*

IT THEREFORE IS ORDERED that respondents' motion to dismiss (ECF No. 24) is GRANTED IN PART and DENIED IN PART, such that Ground 1 is DISMISSED IN PART with only the portion of the claim described at pages 12–13 of this order remaining before the Court.

IT FURTHER IS ORDERED that respondents shall file an answer to all claims remaining before the Court within forty-five (45) days of entry of this order and that petitioner may file a reply within forty-five (45) days of service of the answer.[8]

---

[8] Respondents assert that they "reserve other applicable procedural arguments" in the event that the Court disagrees with their timeliness argument pursuant to *Smith*. (ECF No. 24 at 7 n.5.) The scheduling order in this case stated that respondents must raise all potential affirmative defenses in their initial response and that successive motions to dismiss would not be entertained. (ECF No. 20.) Any purported unilateral reservation notwithstanding, the next step in this case therefore is an answer and reply

14

The Court will be endeavoring to resolve this matter by September 30, 2019, if possible. Accordingly, in the event of scheduling conflicts between this action and other actions pending in this District, any requests for extension should be sought in the earlier-filed case, absent extraordinary circumstances.

DATED: <u>March 20, 2019</u>.

_____
RICHARD F. BOULWARE, II
United States District Judge

---

*on the merits. See, e.g., Morrison v. Mahoney*, 399 F.3d 1042, (9th Cir. 2005) ("*Unless a court has ordered otherwise*, separate motions to dismiss may be filed asserting different affirmative defenses.") (emphasis added). The time to present procedural defenses beyond those raised in the motion to dismiss is past in this case.