# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTHONY MERITT POSEY,

  Petitioner,

v.

DWIGHT NEVEN[1], et al.,

  Respondents.

Case No.: 2:15-cv-01482-RFB-EJY

**Order**

  Anthony Merritt Posey filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This case is before the Court for adjudication on the merits of Posey's petition. The Court also addresses Posey's Motion for Ruling (ECF No. 48) and Respondents' Motion to Strike (ECF No. 49).

  The Court denies Posey's habeas petition, denies him a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly. The Court also grants Respondents' Motion to Strike, striking Posey's Motion for Ruling.

///

///

---

[1] It appears from the state corrections department's inmate locator page that Petitioner is incarcerated at the High Desert State Prison ("HDSP"). See https://ofdsearch.doc.nv.gov/form.php (retrieved December 2022 under identification number 1091115). The department's website reflects no current warden for that facility, but four associate wardens. See https://doc.nv.gov/Facilities/HDSP_Facility/ (retrieved December 2022). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodians, associate wardens Jeremy Bean, Ronald Oliver, Julie Williams, and James Scally, as Respondents for the prior Respondent Neven, pursuant to, inter alia, Rule 25(d) of the Federal Rules of Civil Procedure.

1    **I.      BACKGROUND**

2          On April 7, 2011, a grand jury was empaneled to consider Posey's indictment. ECF No.

3    25-2. At the grand jury proceeding, a victim witness testified that Posey was the boyfriend of his

4    stepdaughter.[2] Id. at 7, 24.[3] Posey and Posey's girlfriend were living with the victim witness and

5    his wife. Id. The victim witness was working in his garage when Posey arrived. Id. at 8, 28. Posey

6    goes into his bedroom, returns to the garage, closes the garage door, and then stabs the victim

7    witness underneath his eye. Id. at 9, 30. The victim witness held the blade of the knife and cut both

8    of his hands. Id. at 9, 32. The victim witness testified that Posey accused him of taking money

9    from Posey the night before. Id. at 11, 38.

10         The victim witness's wife also testified. Id. at 14, 49. She testified that she was in her living

11   room when she heard her husband arguing with Posey in the garage. Id. at 14, 50. After going into

12   the garage and seeing her husband sitting on the ground covered in blood, she entered the garage

13   to help her husband stand up. Id. at 14, 51-52. While she was trying to help her husband stand up,

14   Posey stabbed her in the neck. Id. at 14-15, 52-53. Next, she returned to the house and attempted

15   to call 911. Id. at 15, 53. When she picked up the phone, she could hear Posey and her husband

16   arguing from the phone in the garage. Id. at 54-55. After Posey pulled the phone in the garage from

17   the wall, there was no dial tone. Id. at 15, 54-55.

18         An officer that responded to the scene testified that he was dispatched to the scene because

19   of a disconnected 911 call. Id. at 3, 8. The officer testified that Posey stated, "put the handcuffs on

20   _____

21   [2] The Court makes no credibility findings or other factual findings regarding the truth or falsity of
     evidence or statements of fact in the state court. The Court summarizes statements solely as
22   background to the issues presented in the case, and it does not summarize all such material. No
     statement of fact made in describing statements, testimony, or other evidence in the state court
     constitutes a finding by the Court.

23   [3] For condensed transcripts (e.g., ECF No. 25-2), the Court cites both the CM/ECF page number
     and the page numbers of the original transcript.

me and take me to jail." Id. at 4, 20. A detective that interviewed Posey testified that Posey admitted to stabbing the two individuals. Id. at 18, 65. The detective testified that Posey indicated he stabbed them because they had stolen money from him and because "they had talked down to him in regards to his race." Id. The detective further testified that Posey called 911 requesting the police and an ambulance. Id. at 19, 69.

Posey was charged with two counts of attempted murder with use of a deadly weapon, victim 60 years of age or older; two counts of battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm, victim 60 years of age or older; one count of mayhem with use of a deadly weapon; and two counts of abuse and/or neglect of an older person, resulting in substantial bodily harm, mental harm, or death. ECF No. 25-4.

At his initial arraignment, Posey was present in custody with his counsel, Deputy Public Defender Haylee Kolkoski. ECF No. 25-7. Counsel for Posey requested a three-week continuance to obtain a mental health evaluation. Id. Subsequently, Posey filed a pro per motion to discharge Kolkoski and appoint new counsel. ECF No. 25-19. The state district court found that there was no legal basis for Posey's motion and denied his motion to discharge counsel. ECF No. 25-20. During the motion hearing, however, the court suggested that, if counsel agreed that there was a breakdown in communication, then the public defender's office may opt to assign a new attorney to Posey's case. Id.

Deputy Public Defender Kolkoski filed a motion to withdraw as attorney of record. ECF No. 25-21. After a motion hearing and conferring with Posey, the public defender's office assigned Deputy Public Defender Ryan Bashor as Posey's attorney of record. ECF No. 25-22. Subsequently, Posey filed a pro per motion to discharge Bashor and to appoint new counsel. ECF Nos. 25-23;

25-24. After conducting a motion hearing, the state district court denied Posey's motions without

prejudice as fugitive documents. ECF No. 25-25.

Posey filed a notice of plea of not guilty by reason of insanity. ECF No. 25-26. The state

district court conducted a change of plea hearing and the court addressed Posey as follows:

> **The Court**: All right. Mr. Posey, it's my understanding – your attorney has indicated that you wish to change your plea. Previously you had pled not guilty; now you want to change it to a plea of not guilty by reason of insanity. Is that what you want to do?
>
> **[Posey]:** Initially, I pled not guilty by reason of temporary insanity.
>
> **The Court:** Well, that's not really a defense here. But – so, do you want to plead not guilty by reason of insanity right now?
>
> . . .
>
> **[Posey]:** Whatever [counsel] said.
>
> **The Court:** No, it has to – you have to agree because it's your plea, you're the one with the rights.
>
> **[Posey]:** Whatever [counsel] says.
>
> **The Court:** Is that a yes or a no?
>
> **[Posey]:** Whatever he says.
>
> **The Court:** All right. Well, I am going to – I understand that to be a statement that he's agreeing with the statements of his attorney. So I'm going to enter a plea of not guilty by reason of insanity and [sic] behalf of Mr. Posey.

ECF No. 25-27 at 7-8.

The state district court granted the request to change Posey's plea to not guilty by reason

of insanity. Id. In addition, during the hearing, Posey's counsel submitted a motion to withdraw

due to conflict of interest in open court. Id. at 2. Deputy Public Defender Bashor represented to

the court that Posey filed a habeas petition in federal court that included allegations of ineffective

assistance of counsel that were, in part, directed towards Bashor. Id. The court noted that the

federal court dismissed Posey's habeas petition and declined to issue a certificate of appealability. ECF No. 25-1 at 14. The court denied counsel's motion to withdraw. ECF No. 25-27 at 5.

On the date that trial was scheduled to commence, the state district court conferred with Posey and his counsel regarding Posey's plea of not guilty by reason of insanity outside the presence of the State and the jury. ECF No. 25-31 at 8-9. Posey stated to the court that he initially intended to plead not guilty by reason of temporary insanity. Id. at 17. The court asked Posey if it was his desire to plead not guilty by reason of insanity or to plead not guilty. Id. at 18. Posey stated that he "wouldn't go with [not guilty by reason of insanity] if it means I have got to be totally crazy, because I am not. But I had a blackout, so I don't know." Id. at 19. Posey further explained that when he entered his plea, the judge presiding over his initial arraignment had informed him that guilty by reason of temporary insanity "wasn't a defense." Id. at 22. Counsel informed the court that they did not file a notice of not guilty by reason of temporary insanity because no such plea exists and that they explained such to Posey. Id. at 20. Further, counsel informed the court that they explained to Posey the elements to put on a not guilty by reason of insanity defense, advised Posey against entering a not guilty by reason of insanity plea, but filed the notice of plea and prepared the defense in the manner that Posey desired. Id. at 20-21. The court concluded that Posey's plea of not guilty by reason of insanity was filed because of Posey's desire to pursue the theory that he characterized as temporary insanity, which would fall under the not guilty by reason of insanity plea. Id. at 23. The court further informed counsel that a request to continue the trial would not be granted. Id. at 25.

After a recess, the state district court reconvened, and the parties informed the court that Posey entered a plea agreement. Id. at 27. Posey pled guilty to two counts of abuse and/or neglect of an older person resulting in substantial bodily or mental harm, or death in exchange for the

State: (A) agreeing to not seek habitual criminal treatment, and (B) dismissing the remaining five counts of the indictment. ECF No. 25-32. Posey was arraigned. ECF No. 25-31 at 19.

Posey was sentenced to a maximum prison term of 180 months with a minimum parole eligibility of 72 months for each count of abuse and/or neglect of an older person resulting in substantial bodily or mental harm or death – all sentences to run consecutively. ECF No. 25-33; see also ECF No. 26-41. Posey appealed, and the Nevada Supreme Court affirmed the judgment of conviction. ECF Nos. 26-37; 26-50. Posey filed a state habeas corpus petition, and the state district court denied the petition. ECF Nos. 26-52; 26-70. Posey appealed, and the Nevada Supreme Court affirmed the judgments of the state district court. ECF Nos. 26-64; 26-75.

Posey's federal habeas petition was dispatched, and on February 9, 2017, his federal habeas petition was filed. ECF No. 11. The Court granted counsel for Posey, and Posey filed a counseled, first amended petition. ECF Nos. 10, 18. The respondents filed a motion to dismiss. ECF Nos. 23, 24, 25, 26. The Court granted, in part, and denied, in part, the respondents' motion to dismiss finding Ground 1 unexhausted, in part. ECF No. 34. The respondents answered Posey's first amended petition and Posey replied. ECF Nos. 38, 41.

Posey alleges that his plea was not entered knowingly, intelligently, or voluntarily in violation of the Fifth, Sixth, and Fourteenth Amendments, because:

1. he was not allowed to enter a plea of not guilty by reason of temporary insanity and was wrongly informed that it would be impossible to pursue such a theory of defense at trial;

2. he was led to believe that trial would be futile because his rights were consistently violated, including his right to adequate notice of the grand jury proceedings; his pro se motions were summarily denied without a hearing; and he was denied effective assistance of counsel when replacement counsel was not appointed following a complete breakdown of trust and communication with counsel, leading Posey feeling abandoned by his attorneys; and

3. he had a history of blackouts.

ECF No. 18 at 11-14; see also ECF No. 34 at 12-13.

Posey further alleges that he was denied his right to effective assistance of counsel because of a conflict of interest, as counsel failed to object to the untimely notice of grand jury proceedings, and because counsel failed to adequately communicate with him. ECF No. 18 at 14-19.

## II.    LEGAL STANDARD

### A.    Review under the Antiterrorism and Effective Death Penalty Act

The standard of review generally applicable in habeas corpus cases is set forth in 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Id. (internal citation omitted) (quoting Williams, 529 U.S. at 409-10).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

**B.      Standard for evaluation an ineffective assistance of counsel claim**

In Strickland, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate: (1) that the attorney's "representation fell below an objective standard of reasonableness"; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner's burden is

to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Additionally, to establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the Strickland prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under Hill, a challenge to the voluntariness of a plea may be based upon a claim of ineffective assistance of counsel. As the Supreme Court observed:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. . . . As we explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."

474. U.S. at 59-60.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under Strickland, establishing that the decision was unreasonable is especially difficult. See Harrington, 562 U.S. at 104-05. In Harrington, the United States Supreme Court clarified that Strickland and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. See id. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010)

(internal quotation marks omitted) ("When a federal court reviews a state court's <u>Strickland</u> determination under AEDPA, both AEDPA and <u>Strickland</u>'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington</u>, 562 U.S. at 105.

## III.   DISCUSSION

### A.   Ground 1

Posey alleges a claim consisting of three subparts that his guilty plea was not knowing, intelligent, or voluntary. Posey asserts that he was wrongly informed by the state district court and his counsel that it would be impossible to present a temporary insanity defense at trial. ECF No. 18 at 12. He further alleges that he was coerced to plead guilty because he was convinced that a trial would be futile. <u>Id.</u> at 12-13. Further, Posey asserts that he suffers from significant mental health problems. <u>Id.</u> at 13. The Court will address each subpart in turn.

#### i.   Ground 1(A)

Posey asserts that he indicated a desire to plead not guilty by reason of temporary insanity, but he was instructed that it was not a valid plea. ECF No. 18 at 11. He further alleges that it was never explained to him that a not guilty by reason of insanity plea included a temporal component. <u>Id.</u> The respondents argue that Posey was advised that he could present a temporary insanity defense at trial. ECF No. 38 at 10. In Posey's state habeas appeal, the Nevada Supreme Court held:

> [Posey] claims that the district court was biased and coerced him into accepting the guilty plea because it ignored facts regarding a possible defense, said that temporary insanity was not a defense, and sought to convince appellant that any avenues he thought were available to him were not. [Posey] failed to demonstrate that his guilty

plea was invalid. [Posey] acknowledged both orally and in writing that his plea was not coerced, and he acknowledged in writing that he has discussed possible defenses with counsel. Further, [Posey] did not state any facts that would demonstrate judicial bias. Facts specific to a trial defense are discussed with counsel, not the court, and [Posey] did not identify what other "avenues" he felt were available to him. Finally, his claim that the district court said that temporary insanity was not a defense was belied by the record. We therefore conclude that the district court did not err in denying this claim.

ECF No. 26-39 at 6. The Nevada Supreme Court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice

among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56. "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749.

As noted by the Nevada Supreme Court, Posey affirmed in the plea agreement and at the plea canvass that his plea was not coerced and that he discussed possible defenses with counsel. See ECF Nos. 25-31 at 30-31; 25-32. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Moreover, counsel represented to the state district court that "[counsel] didn't file a notice of not guilty by reason of temporary insanity, because, as [counsel] explained to Mr. Posey, no such plea exists. [Counsel] filed the only other option that is available, and explained to [Posey] all the elements in order for [them] to put on a not guilty by reason of insanity case." ECF No. 25-31 at 20. In addition, counsel provided that although it was counsel's position that they would likely be unsuccessful

in proving the insanity defense, "[counsel] prepared the case, however, despite that, in a fashion that [Posey] wanted, because that is [counsel's] obligation." Id. at 19-20. The state district court concluded that Posey's plea of not guilty by reason of insanity was filed because of Posey's desire to pursue the theory that he characterized as temporary insanity, which would fall under the not guilty by reason of insanity plea. Id. at 23. Accordingly, the Nevada Supreme Court's rejection of Posey's claim was reasonable as counsel discussed possible defenses with Posey, investigated an insanity defense theory, and was prepared to present that defense at trial.

In addition, the Nevada Supreme Court reasonably determined that the record belied the contention that the state district court stated that temporary insanity was not a defense. Although at the change of plea hearing after Posey stated that he initially pled guilty by reason of temporary insanity, the state district court stated, "that's not really a defense here," such statement was in reference to Posey's plea. ECF No. 25-27 at 7-8. The state district court did not represent that an insanity defense was unavailable at trial, which is further established by the state district court's next question asking if Posey intended to plead not guilty by reason of insanity to which Posey answered that he agreed with his counsel's representations. Id. Further, before trial the state district court again discussed Posey's plea with Posey and his counsel wherein the court addressed Posey stating, "[n]ot guilty by reason of insanity addresses itself to what happened at the time of the offense, not that you are sitting here today, and you are totally crazy, to use your words." ECF No. 25-31 at 19. Accordingly, based on the relevant circumstances surrounding Posey's plea, the Nevada Supreme Court reasonably concluded that Posey failed to establish that his plea was not knowing, voluntary, and intelligent.

      **ii.**       **Ground 1(B)**

Posey further alleges that his guilty plea was coerced because he was convinced that a trial would be futile based on his treatment throughout the pretrial proceedings. ECF No. 18 at 12. He alleges that his rights were consistently violated, including his right to adequate notice of the grand jury proceedings; his pro se motions were summarily denied without a hearing; and he was denied effective assistance of counsel when replacement counsel was not appointed following a complete breakdown of trust and communication with counsel. Id. at 12-13.

In his state habeas petition, Posey's allegations that his guilty plea was coerced was intertwined with the claim alleged in subpart A. ECF No. 26-16 at 21-22. Such claim was also vaguely alleged in a pleading filed in his state habeas appeal titled "Petitioner's 1st Memorandum: Brief in Support of Petition for Writ of Habeas Corpus," wherein Posey alleged as follows:

> Guilty pleas are invalid when elements of coercion exist. Kercheval v. U.S., 274 U.S. 220 (1927); Peters v. Warden, N.S.P, 83 Nev. 298 (1967). Coercive factors were prevalent in Petitioner's criminal proceedings.

ECF No. 26-17 at 8. In its opinion denying Posey's state habeas appeal, the Nevada Supreme Court substantively discussed Posey's claims that his guilty plea was invalid in two paragraphs finding, in pertinent part, that "[Posey] failed to demonstrate that his guilty plea was invalid." ECF No. 26-39 at 6.

When a state court denies relief in an order that expressly addresses some of the claims raised by a defendant but that does not expressly refer to another claim that he also raises, "a federal habeas court must presume that the [unmentioned] federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 568 U.S. 289, 292-93, 301 (2013). This presumption, while not irrebuttable, "is a strong one that may be rebutted only in unusual circumstances." Id. at 302. Here, Posey does not refer to or seek to overcome the above presumption nor does he make any argument that this Court's

review of Ground 1(B) should be de novo because the claim was overlooked. Neither Posey nor the respondents have suggested that the state supreme court failed to consider all claims presented in the state habeas action. The Court finds that unusual circumstances are not presented that would overcome the strong presumption that the Nevada Supreme Court rejected the claim on the merits.

When a state court rejects a claim on the merits without articulating a specific rationale, AEDPA's deferential standard of review continues to apply. Harrington, 562 U.S. at 92, 97-100. In that situation, a reviewing federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

In the present case, the Nevada Supreme Court's summary rejection of Ground 1(B) on the merits was neither contrary to nor an objectively unreasonably application of clearly established federal law as determined by the United States Supreme Court. Indeed, the United States Supreme Court's decision in Tollett v. Henderson, sharply curtails the possible grounds available for challenging a conviction entered following a guilty plea. As stated in Tollett,

> . . . . [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutional] standards [established for effective assistance of counsel.]

411 U.S. 258, 267 (2017). Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." Id. Further, the additional factual allegations that Posey

14

presents in the federal petition in support of this claim were not presented to the state supreme court. These additional supporting factual allegations, therefore, may not be considered in reviewing the state supreme court's adjudication of the claim on the merits under AEDPA. Federal habeas review, instead, must be conducted based upon the record that was presented to the state supreme court at the time of its adjudication of the claim on the merits. See Pinholster, 563 U.S. at 180-87.

The bare claim presented to, and adjudicated by, the state court challenges the validity of his guilty plea based on allegations related to pre-plea events, which, under Tollett, are precluded from federal habeas relief. The remaining factual allegations were not presented to or adjudicated by the state supreme court. They are merely additional factual allegations presented for the first time in federal court in support of an otherwise bare claim that Posey's guilty plea was coerced from factors "prevalent in [Posey's] criminal proceedings." ECF No. 26-17 at 8. Under the governing analysis required by AEDPA and Pinholster, federal habeas review of a claim adjudicated on the merits by the state courts is limited to the record presented to the state courts. On that record, the Nevada Supreme Court could have concluded that Posey's bare claim was precluded under Tollett. As such, the Nevada Supreme Court did not unreasonably apply clearly established law to reject Ground 1(B). Accordingly, Ground 1(B) does not provide a basis for federal habeas relief.

### iii.    Ground 1(C)

In Ground 1(C), Posey alleges that his guilty plea was not knowing, intelligent, or voluntary because he suffers from mental health conditions, including blackouts. ECF No. 18 at 13. Posey asserts that mental health issues must be taken into consideration when evaluating whether a guilty plea was knowing, intelligent, and voluntary. Id. The respondents argue that

1  Posey did not provide any medical evidentiary support to substantiate his claim that he suffered

2  from blackouts. ECF No. 38 at 16.

3  As described above, the Nevada Supreme Court summarily rejected this claim as being

4  without merit. The Court reviews this summary rejection under AEDPA's deferential standard

5  of review. Further, it is the petitioner's burden on federal habeas review to demonstrate that the

6  state supreme court's rejection of his claim was either contrary to or an unreasonable application

7  of clearly established federal law as determined by the United States Supreme Court.

8  Posey's conclusory claim fails to allege any factual specifics in support of his claim that

9  his guilty plea was not knowing, intelligent, or voluntary because he suffered from blackouts. He

10  further fails to demonstrate that the state appellate court's rejection of his claim was contrary to

11  or an unreasonable application of clearly established federal law under any United States

12  Supreme Court precedent. Posey attached a medical evaluation report, stemming from

13  complaints of chronic neck and back pain from the Neurology Center of Michigan, to his state

14  habeas petition. ECF No. 26-19 at 7-12. Such evaluation report primarily contained general

15  health information and provided, in pertinent part, that Posey was counseled as follows:

16  "[a]dequate sleep time and sleep hygiene discussed with the patient to include any physical or

17  mental conditions including fainting spells, blackouts, seizure or any other loss of

18  consciousness." Id. at 8. Neither this evaluation report, nor his presentence investigation report,

19  set forth that Posey had a history of suffering from blackouts. ECF Nos. 26-19 at 7-12, 40 at 3.

20  Considering all the circumstances surrounding Posey's plea, the Nevada Supreme Court

21  could have reasonably determined that Posey failed to establish that his guilty plea was not

22  knowing, intelligent, or voluntary due to his allegation that he suffered from blackouts. On the

23  minimal state court record and federal court argument presented, Posey has not demonstrated

16

that the Nevada Supreme Court's rejection of this claim was either contrary to or an objectively unreasonable application of clearly established federal law. Accordingly, Ground 1(C) does not provide a basis for federal habeas relief.

**B.      Ground 2**

In Ground 2, Posey alleges that his counsel was rendered ineffective due to a conflict of interest. ECF No. 18 at 14. He alleges that, during the proceedings, he filed two pro se motions requesting appointment of new counsel, and that Deputy Public Defenders Kolkoski and Bashor requested permission to withdraw as counsel for Posey. Id. at 16. He provides that the four separate motions seeking new counsel for Posey indicated that there was a conflict of interest, and because the trial court denied those motions, he was denied the right to representation free of conflicts. Id. at 16-17.

When, as here, the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court "determine[s] what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." Harrington, 562 U.S. at 102; see also Williams, 568 U.S. at 301 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

The Nevada Supreme Court's rejection of Ground 2 on the merits was neither contrary to nor an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. An exception to the usual Strickland prejudice requirement exists if "counsel [was] burdened by an actual conflict of interest." Id. at 692; see also United States v.

1    Walter-Eze, 869 F.3d 891, 900 (9th Cir. 2017). "[P]rejudice will be presumed only if the conflict

2    has significantly affected counsel's performance—thereby rendering the [outcome] unreliable,

3    even though the Strickland prejudice cannot be shown." Mickens v. Taylor, 535 U.S. 162, 173

4    (2002). To show "an actual conflict of interest," a petitioner must demonstrate an "adverse effect"

5    on    counsel's    performance.    Mickens,    535    U.S.    at    172,    n.5;    see    also

6    Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc) (noting that, to prove an actual

7    conflict, a petitioner must show that there was "an incompatibility between … the lawyer's own

8    private interest and those of the client."). "[A]n actual conflict of interest means precisely a conflict

9    that affected counsel's performance — as opposed to a mere theoretical division of loyalties."

10   Mickens, 535 U.S. at 171. There is no Sixth Amendment right to "a meaningful relationship

11   between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983).

12       The Nevada Supreme Court reasonably rejected Posey's claim because Posey failed to

13   demonstrate that his counsel had an actual conflict of interest that adversely affected his

14   representation. The state district court conducted multiple inquiries into the alleged conflicts before

15   trial. See ECF Nos. 25-20; 25-22; 25-27. The state district court denied Posey's motion to

16   discharge Deputy Public Defender Kolkoski, finding that "there's no legal grounds for this; you

17   can't just pick and choose which PD you get." ECF No. 25-20 at 6. The Public Defender's Office,

18   however, assigned new counsel to Posey's case, Deputy Public Defender Bashor, to accommodate

19   Posey. ECF No. 25-22 at 5. Bashor filed a motion to withdraw on the basis that Posey filed a

20   federal habeas petition. The state district court denied Bashor's motion to withdraw because the

21   federal court dismissed Posey's federal habeas petition and found that there was no actual conflict

22   of interest. ECF No. 25-27 at 6. Further, counsel represented to the state district court that they

23   prepared the case in the manner that Posey desired despite their professional opinions to the

contrary. The state district court concluded the same regarding Posey's plea. ECF No. 25-31 at 19-23. The Nevada Supreme Court did not unreasonably apply clearly established law to reject Posey's claim that he was denied effective assistance of counsel due to a conflict of interest. Accordingly, Ground 2 does not provide a basis for federal habeas relief.

### C.    Ground 3

Posey alleges that that he was denied effective-assistance-of-counsel because his attorney failed to object to the untimely notice of grand jury proceedings, and that as such he was denied the opportunity to testify in front of the grand jury. ECF No. 18 at 18. In Posey's state habeas appeal, the Nevada Supreme Court held as follows:

> [Posey] claimed counsel was ineffective for failing to object to the untimely notice of grand jury proceedings. [Posey] failed to demonstrate prejudice. He did not state what the ultimate result of the objection would have been and thus did not demonstrate a reasonable probability that, had counsel objected to the untimely notice, he would not have pleaded guilty and would have insisted on going to trial. We therefore conclude that the district court did not err in denying this claim.

ECF No. 26-39 at 4.

The Nevada Supreme Court's ruling was neither contrary to nor an unreasonable application of Strickland. The Nevada Supreme Court reasonably found that Posey would not have pleaded guilty and would have insisted on going to trial if his counsel had objected to the alleged untimely notice of grand jury proceedings. Posey, however, failed to set forth what evidence or testimony he would have given at the grand jury proceeding. Further, Posey does not appear to dispute that sufficient evidence existed to support the grand jury's determination and the subsequent indictment.

To obtain relief on this type of claim, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). In exchange for entering a guilty plea, the State agreed to not seek habitual criminal treatment as well as to dismiss the remaining five counts of the indictment. ECF No. 25-32. If Posey rejected the plea agreement and proceeded to trial, he would have faced five additional felony charges as well as potentially habitual criminal treatment at sentencing. As such, he would not have gained the benefit of reduced exposure at sentencing. The Nevada Supreme Court reasonably determined that Posey failed to demonstrate a reasonable probability that, but for counsel's failure to object to an untimely notice of grand jury proceedings, he would not have pleaded guilty and would have insisted on going to trial. See Hill, 474 U.S. at 59-60. Posey is, therefore, denied federal habeas relief on Ground 3.

**D.     Ground 4**

In Ground 4, Posey alleges that, because his attorney failed to adequately communicate with him, he was denied effective assistance of counsel. ECF No. 18 at 19. He argues that his counsel failed to adequately discuss issues of law, trial strategies, or exculpatory evidence. Id. In Posey's state habeas appeal, the Nevada Supreme Court held:

> [Posey] claimed counsel was ineffective for failing to adequately communicate with him at the beginning of the case, object when the State openly denigrated [Posey] in court, and fully address the numerous errors in the presentence investigation report (PSI). [Posey's] bare claims failed to demonstrate deficiency or prejudice. [Posey] did not indicate what was inadequately communicated, when or how the State denigrated him, what the PSI errors were, or how any of the alleged deficiencies affected the outcome of the proceedings. We therefore conclude that, the district court did not err in denying these claims.

ECF No. 26-39 at 3.

The Nevada Supreme Court's ruling was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. With respect to a breakdown in the attorney-client relationship, the Supreme Court has made it clear that the Sixth Amendment guarantee of counsel does not guarantee a meaningful attorney-client relationship. Morris, 461 U.S. at 14. Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Id. at 11.

The Nevada Supreme Court reasonably determined that Posey failed to establish that he would not have pleaded guilty and would have proceeded to trial had counsel adequately communicated with him. At the plea agreement stage, counsel represented to the state district court that counsel had explained to Posey the elements to put on a not guilty by reason of insanity defense, advised Posey against entering a guilty by reason of insanity plea, but nonetheless filed the notice of plea and prepared the defense in the manner that Posey desired. ECF No. 25-31 at 20-21. Posey's bare claim did not set forth how further communication with counsel would have caused Posey to forego the plea agreement and the benefit of reduced exposure at sentencing to instead proceed to trial. The Court need not "address both components of the inquiry" if Posey "makes an insufficient showing on one." Strickland, 466 U.S. at 697. Although the Nevada Supreme Court held Posey failed to demonstrate both deficiency and resulting prejudice, he has not sufficiently demonstrated here a reasonable probability that, but for counsel's failure to adequately communicate, he would have pled differently and insisted on going to trial. Therefore, the Strickland inquiry need not continue, and Posey is denied federal habeas relief for Ground 4.

## IV.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Posey. As such, Rule 11 of the Rules Governing Section 2254 Cases requires that the Court issue or deny a certificate of appealability (COA). The Court has <u>sua sponte</u> evaluated the claims within the petition for suitability for the issuance of a COA. <u>See</u> 28 U.S.C. § 2253(c); <u>Turner v. Calderon</u>, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. <u>Id.</u> Applying these standards, the Court finds that a certificate of appealability is unwarranted.

## V.     MOTION TO STRIKE AND MOTION FOR RULING

On November 22, 2022, Petitioner filed a Motion for Ruling (ECF No. 48). In response, Respondents filed a Motion to Strike (ECF No. 49), arguing that Petitioner's motion was improperly filed by Posey, rather than his appointed counsel. "It is well established that district courts have inherent power to control their docket," including the power to strike improperly filed items from the docket. <u>Ready Transp., Inc. v. AAR Mfg., Inc.</u>, 627 F.3d 402, 404 (9th Cir. 2010). The Local Rules of Practice state, in relevant part:

> A party who has appeared by attorney cannot while so represented appear or act in the case. This means that once an attorney makes an appearance on behalf of a party, that party may not personally file a document with the court; all filings must thereafter be made by the attorney . . . .

Local Rule IA 11-6(a). Because Posey is represented by counsel, he may not personally file motions.

Accordingly, Respondents' motion will be granted and Posey's motion for ruling will be stricken.

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that the First Amended Petition for Writ of Habeas Corpus (ECF No. 18) is DENIED.

**IT IS FURTHER ORDERED** that Petitioner is DENIED a certificate of appealability.

**IT IS FURTHER ORDERED** that Respondents' Motion to Strike Posey's Motion for Ruling (ECF No. 49) is GRANTED, and the Clerk of the Court is ordered to STRIKE the Motion for Ruling (ECF No. 48) from the Court's docket.

**IT IS FURTHER ORDERED** the Clerk of the Court is directed to substitute Jeremy Bean, Ronald Oliver, Julie Williams, and James Scally for Respondent Neven, enter judgment accordingly, and close this case.

Dated: December 12, 2022

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE